Good morning and may it please the court. My name is Hayne Barnwell and I represent Christian Morales on his sentencing appeal. May I reserve three minutes for rebuttal? Yes. Thank you. In arguing that Morales was properly classified as a Tier 3 offender, the government concedes that his Rhode Island conviction does not match all of the elements in the specified Tier 3 offenses under SORNA. Nevertheless, it maintains that SORNA's requirement that the state offense be comparable to or more severe than a Tier 3 offense is a very flexible standard. The biggest problem for the government is, however flexible the words comparable to are, they cannot flex SORNA's wooden provision that the minor victim must be under the age of 13 for the sex offense to qualify as Tier 3. SORNA puts a premium on this age requirement. The age requirement is notably absent and 169114A sub 2. On those two provisions, there is the age requirement that the minor victim must be under the age of 13 for abusive sexual contact to qualify as Tier 3, whereas that age limitation is completely absent for abusive sexual contact to qualify as Tier 2. And in fact, although the government argues today that one or two year age difference doesn't matter, its own final guidelines in interpreting SORNA and implementing SORNA state that essentially Morales is correct, that it does matter. SORNA says that it matters, that one to two year difference does matter with abusive sexual contact. The government also argues that it will qualify as a Tier 3 offense under 169114A i. The problem with that is that there are no elements in the Rhode Island conviction such as force, threats, actual incapacity of the victim. None of those kinds of elements are present in the generic statutory rape crime, which was his conviction in Rhode Island. So they can't meet, even if comparable is somewhat more flexible than say in Jones where the state offense would have been a federal offense. Even if comparable to is slightly more flexible than that, you still have to compare essentially apples to apples. You can't compare apples to oranges. And that's what we're asking this court to do. A good example of this is in its brief. It discusses the, it talks about the quote mere intent to cross state lines in order to engage in a sexual act with a minor under the age of 12. And it tries to say that, well here we have a completed sexual penetration of a minor under 14 years old under Rhode Island law. So isn't that more severe than the intent to cross state lines to engage in a sexual act under the age of 12? That cannot be because the elements are entirely different. Again, it's comparing apples to oranges. And so you don't have the intent requirement in Rhode Island for one thing. You don't have the intent to gratify or rouse any other person, which this court in Jones found very telling. That if that intent element is missing, then they can't show that it would have been a federal offense. And it's the same rule analysis. That it's also not comparable to a federal offense because you're missing a core element. If you go to 4A, little II I guess it is, you would, you agree that he's a tier 2, qualifies as a tier 2 sex offender? I do. And that's because I take it that it meets the standard of abusive sexual contact as described in 2244? Yes, I believe so. So the argument must turn then entirely on the phrase against a minor who has not attained the age of 13 years? Not entirely, just because the government is also arguing that it's different. No, I understand your argument for him not to be a tier 3 sex offender. Since you conceded sexual abusive contact under 2244. The reason that he's not a tier 2 sex offender and qualifies as tier 3, in your view, is because against a minor who has not attained the age of 13? I am arguing that. That is my principal argument. You can't win without that being true, right? Well, I think I can still win. How could you? Just because sexual penetration under Rhode Island is a sexual act under federal law. But you're conceding it's abusive sexual contact as described in 2244. That is true. Because that's why he's a tier 2 sex offender. That is true. So the only issue for us is against a minor who has not attained the age of 13. If, in fact, that phrase covers your client, since you've conceded that it's abusive sexual contact under 2244, then he would be a tier 3 sex offender, right? Well, no, because the... I understand your argument about that. So just on that point, then, could you just explain why the phrase is it comparable to an offense given the age of the victim here, which I understand is not someone who's attained the age of 13, at least that's how the record comes to us at present, why it's not comparable to an offense with someone whose victim is the age who has not attained the age of 13? Yes, because Congress itself expressly limited the scope. And I realize I'm repeating a bit of what you have just asked me. But the provision itself, and it's, by the way, a mirroring provision on the tier 2 part. So tier 2 just says abusive sexual contact, that's it. Then Congress goes to tier 3 and clearly expresses its intent to show everyone that it is much more serious. We are going to catapult you into tier 3 if the minor is under the age of 13. So because Congress is putting it in one but not the other, under basic statutory construction, we know that that needs to be shown. And that, and it's just nowhere in the record in the PSR as well, there's no indication in the PSR that the victim is under the age of 13. And there's nothing else in the PSR to tell us anything about even the underlying, although I don't think the court can consider that, there's nothing else about the description of the crime itself that would get the government to tier 3. Why do we even care what's in the PSR here? Are you arguing for a categorical application? I am. I don't think this court should consider it at all. I'm simply responding to the government's brief, which does at least try to say, well, the PSR says it's vaginal intercourse and that it qualifies as tier 3. And I'm simply arguing to the court, even if this court says, declines to use a categorical approach, that the PSR alone, even under plain error review, just doesn't give us anything beyond really the Rhode Island statute itself, sexual penetration of a minor under 14. You can see that we have to look at the age of the victim. We're not so categorical that we just don't care about the age of the, the actual age of the victim. Well, actually, it is categorical still, because it's an indivisible statute. And there was a case I cited in my reply brief, Acosta, and I forget the other part, that states that, oh, I'm sorry. Well, I guess I'm just, does that mean then if an offense, if a state offense has an age range that is larger than age of 13, but the victim is 8, you don't qualify under title, under tier 3? According to this case, and I think it's, it persuaded me anyway, you can't go into what the victim's age actually was, in fact, because the fact that she could be some other age, theoretically. Makes the offense different, either way. Well, it doesn't, it doesn't actually make the statute divisible, is the reasoning of the Ninth Circuit. And, but your argument for us doesn't depend on that. Even if we do look at the age of the victim, you think you still win, because, in fact, here the victim was 13, not younger than 13. Correct, and I realize that depends somewhat on whether this court is going to judicially notice the documents that I've presented. But I think they at least If we start looking at the age of the victim, suppose the victim is 13 years and a day. In fact, it was her birthday. Then how would you apply the comparability test? The, the bright line is 13. So it's simply not comparable. And it's really not up to the court to judge the wisdom of that. I think the government kind of questions the wisdom of. Could you explain, is that because comparability can't apply to an age? Is it because the way the text reads comparability applies to the offense, in other words the contact, and then the age is just outside the language of comparability? In other words, is the offense comparable and then separately Congress tacked on to it an age restriction? How are we supposed to just read this? Why is it that a one day difference in your view is outside the bounds of saying it's comparable where, you know, certain differences in the elements, slight variation, presumably if comparable means anything, have to be allowed, otherwise it would be identical. Because Sorna has determined under the tier classification scheme, and I want to be clear on that because of course he is still subject to Sorna requirements because of the offense. What Congress is saying though is that we have to tier these people so that the most recidivist, so the people who engage in sexual acts with very young children below the age of 13, we're going to treat that more seriously. We're going to treat that so it can't be just the conduct itself. What if the state statute said something like under the age of 13 or under the age of 14 if the victim's IQ was not above a certain level or emotional maturity on some scale didn't reach a certain level? I'm just talking about the statute, not the facts of the case. Could that be comparable? Those would be subject to the modified categorical approach. Does that assume it's a divisible statute? Because it's divisible, correct. Why was the question posed a divisible statute? I'm sorry, I didn't... So you're interpreting Judge Howard's question as posing a divisible statute? Yes, because he is posing alternatives, actual incapacity, for example, in different ages of the victim. So what if it was just definitional in the statute? If it was definitional? Yes, just that a person who is under the age of 14 but has a certain IQ or emotional maturity shall be considered under the age of 13. I don't know the answer to that. Because it's conflating actual incapacity with the age. So I'm not exactly sure how that would fall as far as comparability to a federal offense. Is that because you think the language of comparability does apply to the phrase who has not attained the age of 13? Yes. You do think that? Because you could think the opposite, which is that abuse of sexual contact, we compare that to make sure it's comparable. It doesn't have to be identical. But then you could say, but that doesn't imply that Congress meant us to take the whole phrase of little I.I., abuse of sexual contact plus having not attained the age of 13, and then look at whether all of that together is comparable to some other offense. That seems to be the government's argument. I would have thought you would argue that you don't have to get to that. Congress just put a hard stop. That's why little I.I. is different than the Tier 2 definition of abuse of sexual contact. You can look at whether the offense is similar or not. But Congress just put a hard stop. Thirteen is it. Thirteen is it. And even if it weren't, in other words, even if the government could separate out little I, again, there's just no force, no threats. If you read all of those statutes, there's just no comparability there. Thank you, Ronis. Good morning. Donald Lockhart for the government. The key problem here is that even if A2 is a hard stop, the greater problem for the defense is A1. We're relying primarily in our brief on A1, which doesn't have a 13-year-old victim cutoff. It simply ropes in a number of predicate federal offenses. If you look at page 6 of our brief, we compare this offense, the Rhode Island offense, to three of the federal offenses that are roped in under AI. And granted, each of those federal offenses has something a little bit different about it than the Rhode Island offense. But here the statute, the SORNA Tier statute, is not a sentencing enhancement statute at all. It's rather a statute that's designed to place offenders in different tiers for purposes of the registration process under SORNA. And the very words of the statute, comparable to or more severe than, tell you that Congress didn't want an element-by-element match. And the key indication of it is the word severe or more severe than. Comparable, you can look at any number of dictionary definitions of that word. But the surest way to define comparable is to look at that word in conjunction with the words that follow, which is or more severe than. By saying more severe than, Congress is defining comparable to mean a much more looser rough cut analysis of whether the prior offense is comparable in terms of its gravity. Is that because you think the 13 and little II is a hard stop? We haven't briefed the question whether it's a hard stop. Is it a hard stop? It's not plain or obvious that it's a hard stop. Is it a hard stop? Not clear. From our position, it's unclear whether it's a hard stop. What about the DOJ guidelines, which seem to expressly treat it as a hard stop? The guidelines do tend to treat it as a hard stop. But it's not clear that they're right? Well, this is why our position is staked on AI, not on A2. So you concede A2? We're not conceding it, no. We're just saying for purposes of plain error review, and don't forget, we're here under plain error review, they have to show it's plain or obvious that the tier III designation is wrong. And the guidelines aren't relevant to that? The guidelines are relevant. Are the guidelines clear that it's a hard stop? What we're saying is you don't need to. But are the guidelines clear that it's a hard stop? The guidelines seem to suggest it's a hard stop. But it's not obvious that it is a hard stop? There's no occasion for you to decide the issue here. Because of AI? Because of AI. And our argument is staked on AI, and the whole point of the defense reply brief and oral argument is to shunt you on to A2, because it's more hospitable ground for them, granted. AI is the more difficult provision for them, because it doesn't have the 13-year victim cutoff. It ropes in these other federal offenses, and this state offense is clearly at least comparable to and arguably more severe than those offenses. Help me with that, because I'm having trouble. Let's assume that the state offense is an indivisible statute for a moment, and let's assume that we're therefore going to do a categorical approach. In other words, all we can say about what he was convicted of is the elements, as broadly construed as possible under that statute. If we assume that was his prior conduct, then under which of these federal offenses that you point to could he have been convicted for that same conduct? Isn't the answer none? No, the answer is you don't look at whether he could have been convicted, because it's not an element. Let's talk about what we look at. Let me get an answer to my question. I'm assuming the categorical approach applies. I'm assuming that all we get is the statute. I'm assuming, in light of your question, that all we can assume is that he was convicted of a completed sexual penetration, which the statute requires on its face, of a girl 14 years old or younger. So let's assume she's 14, given the benefit of everything. We've got a completed sexual penetration of that girl. We say that that is comparable to or more severe than the three. Put to one side, comparable. We'll get there next. My question is, do you agree with me that given those correct assumptions you just made, he could not be convicted under any of those federal statutes? We can see that in the brief, Judge. In other words, we say that in each case where we're comparing this prior state offense to one of the three federal offenses that we're trying to compare it to, there's no element-by-element match. What is little I.I. picking up? Excuse me? If your theory is right, why have little I.I.? Well, you know, the statute is not a model of draftsmanship. So little I.I. is just sort of an extra throw-on? I'm not sure. I haven't thought through the implications of what I.I. would serve. Because your interpretation of I seems fairly capacious. So I guess I'm asking, if your interpretation is right, what was the point of sticking in I.I.? Because the drafters, since they stuck it in, might have thought maybe your capacious view of little I wasn't so correct. My sense is that the drafters were aware that there are a very wide variety of state sex offenses. They wanted to cover as much waterfront as they could. But you think they pretty much accomplished that with I. Maybe you could. But I think they put in I.I. just to make absolutely sure that they grabbed everything possible. And let's back up and recognize here, you have to decide, number one, that it's plain or obvious that this statute requires an element-by-element approach. You have to decide that it's plain or obvious that the categorical approach applies. We haven't even gotten to that question yet. But our position, consistent with the Ninth Circuit's decision in the Beyond case and a more recent decision out of the Fifth Circuit, U.S. v. Gonzales, 757 F. 3rd 425, which joins the Beyond decision, is that the categorical approach does not apply here, at least as to the age factor and probably not as to any of the factors, because this is not a sentencing enhancement statute at all. Don't lose sight of the fact that Congress did. It doesn't affect little I.I. In other words, even if you're right on that, we just say let's just assume the government's dead right on that. With respect to little I.I. If it's a hard stop, we're stuck. Right. But you still have to grapple then with I. I understand with I. Yeah. But you. If it's a hard stop and the categorical. But if you're right on I, it's hard to ever think of a case that would implicate I.I. Well, you have to decide cases case by case. Maybe I. I guess I'm hesitant to adopt a view where I don't have any sense from the government that there would ever then be a case that implicated I.I. Well, Judge, you're looking at this as though it's de novo review, and review is plain error review. And the problem is that we can talk about, have nuanced discussions about all of these issues, but the defendant's burden is to show plain or obvious error. Now, you have to conclude that it's plain or obvious that this prior Rhode Island offense does not compare, is incomparable to, or is less severe than the three listed federal offenses that we're invoking under I. Now, even if you conclude it's plain or obvious that I.I. is the full stop, the defendant's still stuck with I. And it's not whatever else is clear, it's not plain or obvious. How about if I said it's plain or obvious that I can't be so comprehensive that it reads I.I. out of the statute? Well, you think that's wrong? But then you're left with still having to define I. You can't just define I negatively by saying that because the government's interpretation would leave I.I. little work to do, the government has to be wrong. You can't engage in statutory interpretation which leverages that as the be-and-end-all of what I has to mean. You have to look at what I says, and the plain language of I clearly supports our position. It may raise some concerns about what function I.I. has left, but that's not the stuff of plain error review. That's not the stuff of an obvious error at all. And if you were to take that approach, then conversely you'd be left with a problem of I.I. being left no function on the other side, I think. I don't see what, you know, if I.I. is meant to rope in as we submit these other federal statutes, irrespective of the 13-year cutoff in I.I., then why would you even, you know, under your interpretation, what function would I serve? It would serve the function of picking up convictions that matched the conviction here but don't fall within I.I. That's why there's a distinction between sexual abusive contact, which appears both in Tier 2 and Tier 3, and the little I.I. offenses, which are different than that. But again, your question presupposes an element-by-element match. And that's not clearly what the statute says. Let's assume everything you've just said is correct, and so we're therefore faced with the proposition that you could have been convicted of an act under a state statute that does not violate any of these federal statutes at all, but you want us to find it comparable. Once we've got a statute that we know you couldn't even have been indicted for the federal offense, what standard of comparable do you propose? I mean, what's our measuring standard? So here's the problem. If Congress meant for the government to have to show it could obtain a conviction under, you know, federal law, the events that occurred in the requisite federal setting you're talking about, that in effect is what you're saying is an element-by-element match. Congress used the word more severe than, comparable to, or more severe than. It's talking about the gravity or seriousness, severity of the offense. But that's not how – I don't see why you read it that way. Comparable seems to me to be an offense that you – the elements are such that you could have also been convicted of the federal offense. More severe means that it was even worse under the state law. And you don't – you don't – in other words, so it's therefore not comparable, but it's worse. But more severe makes no sense as an element-by-element. I mean, you wouldn't use the word severe or severity in the context of looking at elements. Sure. It doesn't make any sense to do it that way. Is murder comparable to simple assault? No. So Congress could say anything comparable to or more severe than simple assault so they make sure they catch murder under it. That's how I read it. Well, that's just wrong. I mean, Congress has said comparable to or more severe than. That is not like the language used in the sentencing enhancement statutes in Jones. Let's say it's not element-by-element. What is the standard that the government wants us to use? What we're asking you to do is to look at the prior Rhode Island offense, compare it to the three federal offenses that we list on page six of our brief, and ask whether in terms of seriousness, gravity, severity, comparableness, these offenses are close enough to the list of federal offenses. And what's the metric for doing that? Just our own judgment of what seems like a worse crime or a better crime? Well, yes, there is an element of judgment involved, of course. I mean, but there's an element of judgment on all sentencing enhancements. We're talking about a two-level base offense level adjustment. Which one of these offenses? You put a smorgasbord of three up there, but the statute says, is comparable to or more severe than one thing or another thing or another thing. It doesn't say that it's got ingredients that you might find at one of these tables here. So which one of these three things are you saying the state statute is comparable to? There are three federal offenses. I'll go through them if you'd like. Which one is it most comparable to? Okay. I would say if you have somebody who's crossing state lines with a mere intent to engage in a sexual act with a person under 12, okay, an offense which, in the Jones case, Judge Torowea described as a mere thought crime at oral argument, that offense, that mere thought crime offense, is far less severe than a completed sexual penetration of a 14-year-old girl. Far less severe. Is that true in an adult? How about the rape murder of a 30-year-old? That's a lot more severe, isn't it? That is more severe, but it's not a sex offense. Remember here, we're talking about – oh, I'm sorry. I thought I heard just murder. Okay. Yes, that's a more severe sex offense as well. Which is presumably why they put in force. What? Okay. So they – in other words, one way to read the statute is that for certain categories of more severe crimes, they actually articulated them, which is why it's different than sexual abuse of contact under Tier 2. Right? That's the whole point of I. But you're now saying, actually, maybe it's not the whole point of I. This sort of look and things that look a little worse than these other things, that counts too. It just seems like an odd way to have written the statute. Well, the language is unprecedented. You're not going to find this phrase comparable to or more severe than in any federal statute. But doesn't that maybe counsel for us not reading it in the way you suggested? No, because it's a plain error of view. The statute counsels for you to leave this issue for another day and say in a case where it's raised in the district court and where it's actually been teed up, we'll decide definitively whether the government's position is right or not, but we can't conclude on this record that it's plain or obvious that the government's wrong. If you can conclude that we're plain or obviously wrong, you should say it in the opinion. If that's the case, that's the standard, and if you're willing to say it, then you should say it. How would we have been helped had this been raised and fleshed out at the district court? Well, it's not a question of how you would be helped. It's just a function of the plain error standard. But in the district court, it's conceivable that there would have been more skirmishing over the categorical approach. There might have been consideration of the state indictment, which we now attach to our addendum. And by the way, our position is the categorical approach doesn't apply. And even if it does apply, you have to give us the benefit of the modified categorical approach, under which you would consider the state indictment and under which you would have to say that it is plain or obvious that a man who has anal intercourse and sexual intercourse with a 14-year-old girl or under, that that offense is not more severe than or is not comparable to any of the federal offenses that we list on page 6 of the brief. But in the district court, to answer your question, some of these state record issues might have been fleshed out a little bit more. The thing is whether or not the issues would have been teed up more differently for you had the issue been raised in the district court, the defendants just stuck with a plain error standard anyway. A plain error standard doesn't ask about what the benefits would have been of a district court vetting. Are you saying the state statute is divisible? It depends what issue you're talking about. We're saying that the state statute, even if you're not looking at the state indictment, even if you're looking at completed sexual penetration of a girl 14 years or younger, full stop, that that is comparable to or more severe than the... That wasn't the question. The question is if we assume it's an indivisible state statute, which I haven't heard any explanation for why it's not, then back to Judge Barron's question, how could have raising this issue in the district court have possibly shed any further light, I think it was Judge Howard's question, on this matter? Well, the issue of divisibility hasn't even been briefed in this case. Our position is that it is divisible, that it doesn't present the same divisibility problem as the burglary statute where the burglary statute completely omitted the element of unlawful entry. There was no such element in the statute. The government asked the court to apply the modified categorical approach under which, consulting the standard documents, you could tell that the entry in that particular case was unlawful. We don't see a similar divisibility problem in the case of this statute, and the defendant hasn't meaningfully addressed the divisibility question. But the legal issue before us now, we could accept everything you just said, and we're still left with, the whole argument just turns on the meaning of comparability as applied under I, on your theory, to a set of offenses which, under state law, he could not have been convicted of, even if we accept your most, whatever you think is the most favorable way of reading the Rhode Island statute. There's still no way to read the Rhode Island statute as something that leads to a conviction under any of the offenses listed under I. Correct? But your question, again, leads to a conviction. I understand that. So that's what I think. Yeah, that's right. Which means there's nothing below that would have changed. It's just that legal question. Well, yeah, but the plain error test, as I pointed out to Judge Howard, even if the district court proceedings wouldn't have changed anything about this issue, the plain error standard applies here. The defendant has to satisfy it. So, in essence, it doesn't matter whether a district court vetting would have given us some benefit on review to look at this question. Is there anything in the guidelines about your comparability point under I? No, not that I'm aware of. The base offense level provision. No, the DOJ guidelines. Oh, and the DOJ guidelines. No, I didn't see anything on I. The defense quotes all seem to concern to. There's nothing that you're aware of that concerns I? Not that I'm aware of, no. So, I mean, you know, look, our position is it's not a plain or obvious error. If you can conclude that our statutory construction is just plain or obviously wrong, then, by all means, send the case back for a new sentencing. Thank you. Thank you. What we just heard from the government was advocacy for a very impressionistic, subjective approach as to what is comparable to or more severe than. Judge Chiara, I believe you gave a much more objective, reasoned approach as far as what does comparable to or more severe than mean, because if the state, let's say the state offense is murder, then that obviously assumes, say, a federal offense of assault, because it's a lesser included. I think that makes much more perfect sense than this sort of let's just do a grab bag of different elements and see if they kind of vaguely meet some serious or, you know, some seriousness. But that's not what SORNA does. SORNA has a very specific tier classification. So that's not just enough to say it's serious, because, of course, it's serious. He's under SORNA. We have to figure out, is it tier one, tier two, or tier three? As far as the plain error review, I know the government makes much of the fact that we're under a plain error review. I would cite to this court the Stock case, which is quoted in my brief and my reply brief. It's a Sixth Circuit case. It actually came before DECOMP, and it stated that although there's some doubt about whether the categorical approach can be used for SORNA, there are simply no facts or findings that would justify a tier three offense, even under a plain error review. That was a plain error case. So I would cite that case for the proposition that whatever approach ‑‑ I mean, there had to be some approach, whether it's a categorical approach or a modified categorical approach, that the district court was required to apply. It did not do so, which is why, of course, we're here. What I really ‑‑ I think I heard from the other side when all is said and done is that you may well be right about the law, but it's not plain and obvious that you're right about the law. So because this is a plain error review, you lose, and we don't need to decide, ultimately, the law. What's your best case for saying that on plain error review, we can find plain error if the issue, if we don't have a precedent directly on point, and if the issue's a little tricky and we have to work it through, but in the end, we come out one way? Is it always plain error in your view? Well, there's, of course, as far as applicable here, there is a stock case, but there are also first circuit cases like Davila Felix. So, for example, on Davila Felix, the defense counsel should have, I think the court should have, but did not object to the PSR. So here, what he should have done was object to the designation of a Tier 3 offense for that particular conviction. He did not do so, but that silence, basically that silence should not be used against him because under the law, and by the way, the district court did have de comp at the time. So under the law, it's plain. When you read all the statutes, when you do the comparability, which just isn't there, it's plain and obvious. It doesn't matter if the court had de comp, though, right? The question is whether it's plain at the time of the appeal. That's true. Thank you both. Well argued.